UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BRITTANY NICOLE WHITENER, | ) |
| Petitioner, | ) ) ) |
| v. | )  Case No. 1:22-cv-00115-SNLJ )  |
| UNITED STATES OF AMERICA, | ) ) |
| Respondent. | ) ) |

## MEMORANDUM AND ORDER

On August 26, 2022, Petitioner Brittany Whitener ("Whitener") filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. This Court then ordered the United States to show cause why the relief requested in Hudson's motion should not be granted. Based on the reasons set forth below, this Court will dismiss Whitener's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

### I.  PROCEDURAL HISTORY

In May of 2019, investigators received information that Brittany Nicole Whitener and others were having packages of methamphetamine shipped from California to the Eastern District of Missouri where they would sell the drugs to others. *United States v. Whitener*, Case No. 1:20-CR-00075-SNLJ ("Crim. Case"), Doc. 434 at 2-3.

On December 7, 2019, Whitener was expecting the arrival of a drug parcel at the residence of brothers Brody and Tanner Katz. *Id*. at 3. Whitener directed Alicia Elaine Stahl to try and pick up the parcel at the post office, but Stahl got the wrong parcel by

mistake. *Id*. Stahl would later be interviewed and admit that she had gotten a quarter ounce of methamphetamine from Whitener twice, but Brody Katz was her "Plug" for methamphetamine. *Id*. On December 9, 2019, the parcel, containing approximately seven pounds of methamphetamine, was delivered, but mistakenly opened by a relative of the Katz brothers who called police. *Id*. Tanner Katz told officers that his brother Brody Katz had told him to be on the lookout for the package, and that he had seen Brody Katz and Whitener "breaking up" a package of methamphetamine at the house previously. *Id*. Later that day, Whitener spoke by phone with Justin Leon Bennett, who was in prison, and explained what had happened. *Id*. Bennett advised Whitener to "get some people in there ASAP" before "they" call the cops. *Id*. Whitener and Kayla M. Wilcox traveled to the residence and at Whitener's request Wilcox indicated to a family member that the parcel was for her, in an unsuccessful attempt to get it back. *Id*.

On January 11, 2020, Whitener met with Brody and Tanner Katz to discuss the lost package. *Id*. Later that evening officers arrested Brody Katz on a failure to appear warrant after the brothers stopped at a convenience store. *Id*. Officers located a stolen .45 ACP Colt Pistol on Tanner Katz's person, as well as a stolen SCCY 9 mm pistol, 23 grams of methamphetamine and six containers of marijuana in Brody Katz's car. *Id*. Tanner Katz would later admit that he was riding with Brody while he was making drug deliveries. *Id*.

On January 12, 2020, a concerned parent turned over a phone containing a series of Facebook Messenger communications between Whitener and the parent's 15-year-old minor child in December of 2019. *Id*. at 4. The juvenile had requested Whitener to "front" them a zip, meaning to sell them an ounce of methamphetamine on credit. *Id*. Whitener

2

had also asked the juvenile to collect a drug debt from a relative of the juvenile, stating that she would give the juvenile $50 for doing so. *Id*. Whitener told the juvenile that the relative "should have money" as Whitener had given them "2 zips", or two ounces of methamphetamine to sell. *Id*.

On January 14, 2020, Officers interviewed John Henderson, II, who admitted that from April 2019 to November 2019 he was getting parcels of methamphetamine for Whitener and was selling it. *Id*. Records indicated that Henderson had received a number of parcels by United States Mail and Federal Express. Henderson indicated he gotten a total of about 50 pounds of methamphetamine from Whitener over the course of the conspiracy. *Id*. On April 21, 2020, police learned that a suspicious parcel from California was enroute to Brett Holder's residence in Hillsboro, Missouri. *Id*. Officers observed Holder hand the parcel to Whitener, who was a passenger in a car being driven by Bennett. *Id*. Bennett fled from officers, striking an unmarked police car. (Id) The pursuit ended when Bennett crashed the car in a field and both he and Whitener fled on foot. Bennett abandoned the parcel, which contained approximately 3 pounds of methamphetamine and some marijuana into the woods. *Id*. Holder admitted that this was the second parcel he had received for Whitener. *Id*. Holder said that Whitener had paid him $200 and a couple grams of methamphetamine for accepting the first parcel three weeks earlier. *Id*.

After Whitener was arrested, she called Tesla Eavett Sensabaugh and Jack Albert Gidney from jail to enlist their assistance in removing approximately one pound of pills, believed by Whitener to be MDMA but later determined to be methamphetamine, from Whitener's safe at her residence in St. Francois County. *Id*. at 4-5. Gidney and Sensabaugh

3

went to the residence and retrieved the pills, most of which Sensabaugh delivered to an individual who was friends with Whitener. *Id*. at 5. Both Sensabaugh and Gidney were interviewed and indicated that they had retrieved the pills in order to assist Whitener. *Id*.

Initially charged in a complaint along with Bennett, Whitener, Bennett and ten other people were indicted for conspiracy to distribute more than 500 grams of a mixture or substance containing methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1) and 846, on May 12, 2020. Crim. Case, Doc. 23.

After receiving five extensions of time to consider filing pretrial motions, Crim. Case 365, Whitener waived motions on June 4, 2021. Crim. Case 387. Whitener pleaded guilty to the conspiracy count on July 21, 2021. Crim. Case 433. Pursuant to a written plea agreement with the government. Crim. Case 434. In exchange for her plea to Count I, the Government agreed to not file any additional charges related to Whitener's conduct, and to move for the dismissal of Count VII, charging possession with intent to distribute methamphetamine, at the time of sentencing. *Id*. at 2. The parties also agreed to recommend a sentence within the range of 180-240 months. *Id*.

In addition to the facts recited above, Whitener also agreed to the applicability of certain guidelines provisions as a part of the plea agreement. Whitener agreed that the base offense level should be 36 pursuant to Section 2D1.1(c)(2), because the offense involved at least 15 kilograms, but not more than 45 kilograms of methamphetamine, *Id*. at 6), Whitener agreed that she should receive a two level enhancement pursuant to Section 2D1.1(b)(16)(B)(i), because she involved a minor in the offense. *Id*. Additionally, Whitener agreed that she should receive a four-level enhancement pursuant to Section

4

3B1.1(a), as she was an organizer or leader of a criminal activity involving five or more participants or which was otherwise extensive. *Id*. at 6-7. A presentence investigation report ("PSR")[1] was prepared that agreed with the parties estimates as to the base offense level PSR ¶ 48, the two-level enhancement for involving a minor in the offense PSR ¶ 49, and the four-level enhancement for Whitener's role as an organizer/leader in the offense. PSR ¶ 51. Whitener received a three-level deduction for acceptance of responsibility and timely notification of her intent to plead guilty. PSR ¶ 55-56. The PSR set the total offense level at 39, which was in accordance with the parties' recommendations in the plea agreement. PSR ¶ 57; Crim. Case, Doc. 434 at 7.

Whitener's criminal history consists of a felony conviction for possession of a controlled substance with intent to distribute in 2019, for which she was on probation during the time she was leading the conspiracy that was the subject of the instant offense. PSR ¶ 61. As a result, Whitener was determined to have a criminal history category of II. PSR ¶ 65. Based on a total offense level of 39 and a criminal history category of II, Whitener's advisory guidelines imprisonment range was 292-365 months, substantially above the 180-240 month range agreed upon by the parties.

At Whitener's sentencing on January 18, 2022, she did not object to the PSR or to the sentencing guidelines calculations. Sent. Tr. at 2-3.[2] After considering the parties filings and statements, the Court sentenced Whitener to a term of imprisonment of 210 months imprisonment to be followed by five years of supervised release. Sent. Tr. at 14; Crim.

---

[1] Citations to the PSR are to Crim. Case, Doc. 572, the Final Pre-Sentence Report filed January 12, 2022.
[2] Crim. Case, Doc. 628.

5

Case 583. Whitener did not object to the Court's consideration of the 3553(a) factors or the sentence itself. Sent. Tr. at 17-18. Whitener also subsequently signed a Notice of Compliance with Local Rule 12.07 indicating that she did not wish to appeal, which was filed by her attorney. Crim. Case, Doc. 588.

Whitener did not file an appeal in a timely manner, and on August 26, 2022, filed her motion under Title 28 U.S.C. Section 2255 herein.  She raises two grounds of ineffective assistance of counsel. First, that her attorney failed to explain her rights, failed to file an appeal on her behalf, and further that her attorney forced her to sign a paper stating that she would not appeal. Second, Whitener alleges that her attorney failed to challenge the drug quantity and Whitener's enhancements for being a leader or organizer in the criminal activity.

## II.   LEGAL STANDARD

"Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quotation omitted). And like habeas corpus, this statutory remedy "does not encompass all claimed errors in conviction and sentencing." *Id*. (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Under Section 2255(a), a petitioner may file a motion for post-conviction review on four specified grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States.' (2) 'that the court was without jurisdiction to impose such sentence.' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Martin v. United States*, 150 F. Supp. 3d. 1047, 1049 (W.D. Mo. 2015)

6

(quoting *Hill v. United States*, 368 U.S. 424, 426-27 (1962)); See also R. GOVERNING § 2255 PROCEEDINGS 1. The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted)

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

"A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quotation omitted). Ineffective-assistance claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [a petitioner] to show that his trial counsel's *performance* was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance *prejudiced* his defense." Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995) (quotation omitted) (emphasis added). "Failure to satisfy either' [the performance or prejudice] prong is fatal to the claim." *Cole v. Roper*, 579 F. Supp. 2d 1246, 1263 (E.D. Mo. 2008) (citation omitted). Indeed, "[i]f the petitioner makes an insufficient showing on one component, the court need not address both components." *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000).

Under the performance prong, courts "apply an objective standard [to] determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Nave*, 62 F.3d at 1035 (quotation omitted). In doing so, a court must be careful to "avoid the distorting effects of hindsight . . . by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (citation omitted). The

7

starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (citation omitted). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," even if those decisions prove unwise. *Strickland*, 466 U.S. at 690.

Under the prejudice prong, the petitioner must show "a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave*, 62 F.3d at 1035 (quotation omitted). This inquiry depends on the likelihood of success if the alleged error were corrected. *Hill*, 474 U.S. at 59. "[I]f there is no reasonable probability that the motion would have been successful, [the movant] cannot prove prejudice." *DeRoo*, 223 F.3d at 925.

**IV.   NEED FOR AN EVIDENTIARY HEARING**

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Holder v. United States*, 721 F.3d 979, 993 (8th Cir. 2013) (quoting 28 U.S.C. § 2255(b)). "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *United States v. Anjulo-Lopez*, 541 F.3d 814, 817 (8th Cir. 2008) (quotation omitted). For instance, "[a] district court need not hold an evidentiary hearing if the facts alleged, taken as true, would not justify relief." *Larson v. United States*, 905 F.2d 218, 221–22 (8th Cir. 1990) (citation omitted). Moreover, in conducting this inquiry, courts may not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *Simmons v. United States*, No. 1:16-CV-101 SNLJ, 2016 WL 5941929 (E.D. Mo.

8

Oct. 13, 2016) (citation omitted); see also *Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (reaffirming long-standing rule of dismissing allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). In the ineffective-assistance context, a court "must consider the validity of a petitioner's allegation of ineffective assistance of counsel" in light of the record to determine whether an evidentiary hearing is necessary. *Holder*, 721 F.3d at 994 (quotation and internal alterations omitted); *Blankenship v. United States*, 159 F.3d 336, 337 (8th Cir. 1998).

### A. Need for an Evidentiary Hearing

28 U.S.C. § 2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under § 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*,

9

11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a Section 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id*. at 225-6; see also *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

V.  **DISCUSSION**

   A. **The Record Reflects that Whitener Did not Request to Appeal in a Timely Fashion**

Whitener makes three claims concerning her appeal rights that are either contradicted by the record, factually unsupported or both. Whitener claims that:

> I ask my attorney, after sentencing, what did the judge mean when he stated that I had a right to appeal, and if I did want to do it, I had 14 days from my sentencing to do it. Once I was sentenced, I asked my attorney to file it, and she said that I could not do it. She even made me sign a paper stating that I did not, and would not appeal. I didn't know what else to do. The 14 days have passed. I want to appeal. Is there anything else that I can do now? I don't know or understand a lot of this federal law. I believed that she had my best interest at heart. I would like to appeal.

Doc. 1 at 3.

Although the defendant plays at not understanding her rights in this respect the record reflects that she is intelligent, is educated, and was fully informed of her rights. Whitener graduated high school ranked 21st out of 124 students. PSR ¶ 81. She earned an Associate of Arts degree from Mineral Area College (PSR ¶ 82), and a certificate in cosmetology from the National Academy of Beauty Arts (PSR ¶ 83).

Whitener had been arrested in August of 2018, for drug trafficking, and pleaded guilty to felony possession with intent in September of 2019. PSR ¶ 61. As such, Whitener

10

would have gained a basic understanding of how the system works, including appeal rights.

The plea stipulation clearly set out Whitener's right of appeal, as well as stated that Whitener understood those rights.

> **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.
>
> **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).
>
> **(2) Sentencing Issues:** The parties each reserve their respective rights to appeal any and all sentencing issues.

Crim. Case, Doc. 434 at 7-8.

During the plea colloquy, the Court asked Whitener if she had discussed the plea agreement with her attorney and if she understood it.

> THE COURT: The lawyers have given me this written guilty plea agreement consisting of 12 pages. And I see that you and the lawyers have signed it on page 12; is that right?
>
> WHITENER: Yes.
>
> THE COURT: Have you read the agreement?
>
> WHITENER: Yes.
>
> THE COURT: Have you gone over it in detail with your lawyer?
>
> WHITENER: Yes.
>
> THE COURT: Has he explained the contents of the agreement in detail to you?
>
> WHITENER: Yes.

11

| | | |
|---|---|---|
| THE COURT: | | Do you understand the contents of the agreement? |
| WHITENER: | | Yes. |
| THE COURT: | | Is there anything in here that you do not understand? |
| WHITENER: | | No. |

Plea Tr. at 6.[3]

The Court then specifically asked about Whitener's understanding of the appeal rights section of the stipulation.

| | | |
|---|---|---|
| THE COURT: | | I'm going to turn over to Page 7, Paragraph 7 entitled, "Waiver of Appeal and Post-Conviction Rights." Subparagraph (a)(1) addresses the non-sentencing issues. Under this provision you agree to waive or give up your right to bring an appeal in this case as to the non-sentencing issues. That is to everything that's transpired in the case up to and through this guilty plea hearing, including all the rulings on all the pretrial motions. Do you agree with that? |
| WHITENER: | | Yes. |
| THE COURT: | | So the only thing you can appeal is the actual sentence itself. Do you understand that? |
| WHITENER: | | Yes. |
| THE COURT: | | Again, your lawyer has explained it; right? |
| WHITENER: | | Yes. |
| THE COURT: | | Any questions about that? |
| WHITENER: | | No. |

Plea Tr. at 7-8.

---

[3] Crim. Case, Doc. 626.

12

After the sentencing the Court again admonished Whitener concerning her appeal rights.

> THE COURT: I have to advise you you have a right to appeal from this sentence, but you have to bring your appeal within 14 days. Failure to appeal within the 14-day period will be a waiver of your right to appeal. You're also entitled to assistance of counsel in taking an appeal. If you can't afford a lawyer, one will be appointed to represent you. And if you so request, the Clerk of the Court will file a notice of appeal on your behalf. Do you understand you have that right to appeal?
>
> WHITENER: Uh-huh, yes.

Sent. Tr. at 17.

Whitener then signed a notice of compliance with Local Rule 12.07(A) form which specifically indicated that her attorney had explained her right of appeal and that she did not wish to appeal. Defense counsel indicated on that form:

> …Defense counsel has explained to defendant his/her right to appeal and defendant has not requested that counsel file a Notice of Appeal.

Crim. Case, Doc. 588.

The form also contains the following statement which Whitener signed.

> I have been fully informed of my right to appeal the final judgment in this case, I do not wish to file a Notice of Appeal, and I have instructed my attorney not to file a Notice of Appeal.

Crim. Case, Doc. 588.

The record clearly reflects that Whitener was fully informed of her right to appeal in various ways; it was explained by her attorney, outlined in the plea agreement, explained at the plea hearing, explained again by the Court after sentencing, and explained a final

13

time when she signed the form under Local Rule 12.07(A).

Whitener's assertion that she asked her attorney after sentencing, "what did the judge mean when he stated that I had a right to appeal, and if I did want to do it, I had 14 days from my sentencing to do it" (Doc. 1 at 3) is simply not credible in the face of the record. If Whitener's claim that she did not understand her appeal rights is not credible, her allegation that her attorney refused to file the notice and then "… made me sign a paper stating that I did not, and would not appeal" (*Id.*) is totally outlandish.

To begin with, Whitener has every motivation to lie in order to get a chance to get a reduced sentence. The fact that she is a twice convicted drug trafficker does not add to her credibility. Her assertion that she did not understand her appeal rights, in light overwhelming evidence to the contrary, also demonstrates that she is simply not credible.

What should be the death knell for Whitener's claim in this respect is the absolute lack of corroborating details about how all of this came to pass. Whitener offers no proof, other than her own self-serving, inherently unbelievable story to support her claim. She makes no explanation as to why her attorney, who did a very good job in representing her, would want to deny her the right to appeal. Neither does she explain by what means her attorney "made" her sign the waiver form. It is simply unbelievable that Whitener, who ran a major drug trafficking organization, could be forced to waive her right of appeal by her attorney.

A careful examination of the sentence that Whitener received also supports the conclusion that she did not wish to appeal in a timely fashion. Whitener agreed to the sentencing guidelines that applied in her case, did not object to either the guidelines range

14

or her criminal history calculation, and was sentenced within the below guidelines range that the parties agreed was appropriate. She didn't object at the time the sentence was imposed. Although Whitener undoubtedly got a longer sentence than she wished, she certainly did not get a sentence out of the range that she should have reasonably anticipated. In short, the circumstances indicate that there was simply no reason for Whitener to appeal once the sentence was imposed.

Another significant consideration in this case is the timing of her claim. If Whitener had really wished to appeal her sentence on January 18, 2022, when she signed the Local Rule 12.07(A) Notice (Crim. Case, Doc. 588) why did it take her until August 22, 2022 (Doc. 1) to bring the issue to the Court's attention? Whitener was informed by the Court at the time of sentencing as follows:

> THE COURT: I have to advise you you have a right to appeal from this sentence, but you have to bring your appeal within 14 days. Failure to appeal within the 14-day period will be a waiver of your right to appeal. You're also entitled to assistance of counsel in taking an appeal. If you can't afford a lawyer, one will be appointed to represent you. And if you so request, the Clerk of the Court will file a notice of appeal on your behalf. Do you understand you have that right to appeal?
>
> WHITENER: Uh-huh, yes.

Sent. Tr. at 17.

Whitener was clearly advised of the consequences of a failure to appeal within 14 days, yet she did not request the Clerk of Court to file a notice of appeal on her behalf, nor did she request a different attorney to represent her. A reasonable inference to be drawn from the evidence is that Whitener's desire to appeal did not arise until well after the time

15

for filing an appeal had run.

An interesting fact which supports the conclusion that Whitener's desire to appeal only arose at a later date is the fact that Whitener's co-defendant and romantic partner, Justin Bennett (PSR ¶ 72), also filed an unsupported Section 2255 Motion claiming that he "never got the direct appeal" for which he asked, prior to Whitener's claim that her attorney wouldn't file a notice of appeal on her behalf. *See* 1:22-cv-00025-SNLJ, Doc. 1 at 7.

Generally speaking, where a petitioner's allegations in a Section 2255 Motion, if true, amount to ineffective assistance of counsel, a hearing must be held unless the record affirmatively refutes the factual assertions upon which the claim is based. *Watson v. United States*, 493 F.3d 960, 964 (8th Cir. 2007). An attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to an evidentiary hearing, and no inquiry into prejudice or likely success on appeal is necessary to that determination. *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000). This is true even if the Movant waived their right to appeal as part of a plea agreement. *United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014)

However, Whitener's claim that she wished to file a timely appeal, that her attorney refused to do so, and instead "made' her sign the Local Rule 12.07(A) form stating that she did not want to appeal is both inherently unbelievable and is totally contradicted by the record. As a result, Whitener's Section 2255 Motion is inadequate on its face within the meaning of *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993), and will be denied without a hearing.

16

### B. The Record Reflects that Whitener Did Not Receive Ineffective Assistance of Counsel at Sentencing

Whitener also claims that she received ineffective assistance of counsel due to her attorney's failure to argue the quantity of methamphetamine attributed to her for purposes of sentencing (Doc. 1 at 4), and her attorney's failure to challenge the enhancement for her role in the offense, as well as her level of culpability. Doc. 1 at 4-5.

These allegations are completely without merit, as Whitener expressly agreed to the calculation of the drug quantity and the resulting offense level in the plea agreement.

> The parties agree that the base offense level is 36, as found in Section 2D 1.1(c)(2). The amount of mixture or substance containing methamphetamine for which the defendant is accountable is at least 15 kilograms, but not more than 45 kilograms.

Crim. Case, Doc. 434 at 6.

The factual stipulation in the plea agreement clearly set out that the amount of methamphetamine for which Whitener was responsible was more than 15 kilograms. This figure included:

- 7 pounds (3,175 grams) seized from the Katz brother's residence. *Id.* at 3.

- 2 ounces (56 grams) sold to the juvenile's drug debt collectors relative. *Id.* at 4.

- 50 pounds (22,680 grams) shipped to John Henderson. *Id.* at 4.

- 3 pounds (1,360 grams) Whitener and Bennett had when arrested. *Id.* at 4.

- 1 pound (617 grams) Whitener's stepfather and friend retrieved. *Id.* at 5.

The total amount specifically mentioned in the plea stipulation was 27.8 kilograms, almost twice the amount needed to obtain the base offense level which Whitener agreed applied at the time of the plea.

17

Likewise, Whitener agreed in the plea stipulation that she should receive a four-level enhancement for her role in the offense:

> The parties recommend that four levels be added pursuant to Section 3Bl.l(a), as the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

Crim. Case, Doc. 434 at 6-7.

The factual basis that Whitener agreed to at the time of the plea clearly reflects her role as an organizer or leader in a large drug conspiracy that involved more than five participants[4], and which the Government argues was also "otherwise extensive" given the scope of the operation. In terms of Whitener's leadership role, as a part of the plea stipulation she agreed that:

- She had directed Alicia Stahl to pick up a package of methamphetamine at the post office. *Id.* at 3.

- She had requested Kayla Wilcox to attempt to retrieve the package of methamphetamine, which was intercepted by a relative of the Katz brothers. *Id.*

- She had met with the Katz brothers to discuss the lost package of meth. *Id.*

- She had offered to pay the juvenile subject $50 to collect a drug debt. *Id.* at 4.

- John Henderson admitted that he had been getting parcels of methamphetamine and selling them for Whitener. *Id.*

- Brett Holder admitted that he had been paid by Whitener to receive packages of methamphetamine for Whitener. *Id.*

- She had sent Tesla Sensabaugh, and Jack Gidney, Whitener's stepfather, to retrieve a pound of methamphetamine pills after Whitener and Bennett were arrested. *Id.* at 4-5.

---

[4] As a part of the plea, Whitener agreed that she had conspired with at least 11 other people: Justin Leon Bennett, Brody Joseph Katz, Alicia Elaine Stahl, Kayla M. Wilcox, a/k/a, Kayla Zink, Stacy Lee Jones, Tanner Boyd Katz, Brett Alan Holder, John Theodore Henderson, II, Tesla Eavett Sensabaugh, and Jack Albert Gidney, and the unnamed juvenile subject. Crim. Case, Doc. 434 at 4-5.

After the factual basis was read into the record, the Court inquired of Whitener:

THE COURT:     You heard the statements from the prosecutor?

WHITENER:      Yes, sir.

THE COURT:      Is everything he said true and correct?

WHITENER:      Yes.

THE COURT:     Do you admit that you did all those acts he described?

WHITENER:      Yes.

THE COURT:     There's no question about it, is there?

WHITENER:      No.

Plea Tr. at 14.

The PRS followed the parties' agreements as to the sentencing guidelines, and Whitener failed to object to those calculations at the time of the sentencing. The factual basis, which Whitener agreed was correct at the plea colloquy, clearly supports the agreed upon enhancements.

It is well established that counsel cannot be considered to be ineffective for failing to raise issues upon which a defendant would not have prevailed. *United States v. Johnson*, 707 F.2d 317, 320 (8th Cir. 1983) *See also Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) ("Counsel's failure to advance a meritless argument cannot constitute ineffective assistance."). Given the circumstances, there was simply no reason for Whitener's counsel to challenge the drug quantity, or Whitener's role in the offense, and such a challenge would not have prevailed in light of the evidence. Whitener was in no way prejudiced by her counsel's failure to object to something, which was wholly

19

supported by the evidence and which Whitener agreed applied. Whitener's allegations in this respect are also without merit.

## VI. CONCLUSION

For the foregoing reasons, this Court will deny Whitener's § 2255 motion [Doc. 1] without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Hudson has not made a substantial showing of the denial of federal constitutional right.

**SO ORDERED** this 27th day of December, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE